# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TYRONE HENRY MCMILLER, | ) |
|     Plaintiff, | ) ) |
| v. | )   Case No. CIV-14-161-W |
| CORRECTIONS CORPORATION OF AMERICA; CHAD MILLER, WARDEN; SGT. STOKES; COUNSELOR GIBSON; FNU DURANT; FNU PAINE; FNU SELLERS; AND LT. BATTLES, | ) ) ) ) ) ) |
|     Defendants. | ) |

## REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing pro se, and in forma pauperis brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. (ECF No. 1) (Complaint). United States District Judge Lee R. West has referred the matter to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). Before the Court is the Motion to Dismiss **(ECF No. 29)** (Motion) filed on behalf of Defendants Miller, Gibson, Stokes, Sellers, and Paine. Defendants urge dismissal based solely on Plaintiff's alleged failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA). Plaintiff has responded. (ECF No. 34) (Response). For the reasons set forth below, it is recommended that Defendant's' Motion to Dismiss be **DENIED**.

### I.    Background

Plaintiff is currently incarcerated in Cimarron Correctional Facility (CCF), a private prison facility owned and operated by Corrections Corporation of America (CCA) under contract with the Oklahoma Department of Corrections (ODOC). Plaintiff alleges he was

subjected to excessive force on November 5, 2013, as punishment for his having exercised his First Amendment right to free speech to complain about the unsanitary condition of the shower.[1] According to the Complaint, Duran punished Plaintiff by handcuffing him and making him stand in the filthy shower for forty-five minutes. Plaintiff contends that the restraints were too tight and hurt both his wrists. During the forty-five minutes he was left handcuffed in the shower, Stokes and Gibson passed near enough for Plaintiff to ask each of them to loosen his handcuffs and call Lt. Battle. Both defendants refused to loosen the restrains and neither one called Battle. When Battle arrived forty-five minutes later, he, too, refused to loosen the restraints. Battle did, however, release Plaintiff from the dirty shower and escort him back to his cell.

## II.    Issues Presented

For purposes of deciding this Motion only, Plaintiff's factual allegations are accepted as true. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").

In Counts I and II, Plaintiff contends Duran used excessive force in retaliation for Plaintiff's having exercised his First Amendment right to free speech. According to Plaintiff, he was complaining to Duran about the unsanitary conditions of the shower

---

[1] Plaintiff also alleges medical personnel were deliberately indifferent to his serious medical needs. As defendants note, Plaintiff filed a grievance numbered 13-266 seeking medical treatment, and his grievance was granted. Therefore, he was not required to appeal. Subsequently, Plaintiff filed other grievances regarding his medical care. These grievances were returned unanswered as untimely filed. The denial of the subsequent grievances does not render the issues raised and addressed in grievance number 13-266 unexhausted. Therefore, the issues exhausted in grievance number 13-266 are properly before this Court.

when Duran stated, "I will fix you," left the shower area temporarily, and returned with handcuffs. (Complaint at 7). Upon his return, Duran opened the small security hole in the shower. Plaintiff turned his back to the shower door and stuck his hands through the security hole in the shower door so Duran could secure Plaintiff's hands behind his back in handcuffs. (*Id.* at 4). Placing restraints on Plaintiff's wrists in this manner before he is allowed to leave the shower stall is apparently a security measure performed regularly. But this time, according to Plaintiff, the handcuffs were too tight, and he immediately asked Duran to loosen them. Duran refused to loosen the restraints and did not let Plaintiff leave the shower stall. Instead, Duran issued another threat saying, "keep [whining] and I will rub your face in the shower." (*Id.* at 8).

When Stokes arrived, Plaintiff told him Duran was threatening him and using excessive force. He asked Stokes to loosen the handcuffs. When Plaintiff stated he had a constitutional right to shower in a sanitary environment, Stokes became irate saying, "You don't have a right to nothing." Stokes slammed shut the security hole in the shower door. (*Id.*). When Plaintiff asked Stokes to call Battle, Stokes replied, "We're not calling no one." (*Id.*).

Several minutes later, Gibson also refused to loosen Plaintiff's handcuffs. According to Plaintiff, Gibson had witnessed the use of excessive force. (*Id.*). Plaintiff also asked Gibson to call Battle, but Gibson stated he was not going to call anyone and that Plaintiff would "stand in the shower." (*Id.*). Forty-five minutes later, Battle arrived and escorted Plaintiff back to his cell without having first loosened the handcuffs. (*Id.* at 9).

3

In Count III, Plaintiff alleges Dr. Paine, the prison doctor, and Sellers, the Health Care Administrator at CCF, were deliberately indifferent to the serious injuries to Plaintiff's wrists, administered inadequate medical care, and thereby violated Plaintiff's Eighth Amendment right to be free of cruel and unusual punishment. (*Id.* at 11-14).

### III. Analysis

**A. The Exhaustion Requirement**

The PLRA requires a prisoner to exhaust available administrative remedies before bringing a civil rights action in Federal court:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such **administrative remedies as are available** are exhausted.

42 U.S.C. § 1997e (emphasis added).

Before dismissing a plaintiff's complaint for failure to exhaust administrative remedies, a court must determine what, if any, administrative remedies are available. The Tenth Circuit Court of Appeals has emphasized that the PLRA requires the exhaustion of "available" administrative remedies only. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). Moreover, district courts are "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials" before dismissing a claim for failure to exhaust. *Aquilar–Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).

> Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they

4

render that remedy "unavailable" and a court will excuse the
prisoner's failure to exhaust.

*Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) (citing *Lyon v. Vande Krol*, 305 F.3d 806, 808 (8th Cir. 2002) (en banc) ("[W]e have held that inmates cannot be held to the exhaustion requirement of the PLRA when prison officials have prevented them from exhausting their administrative remedies.")).

### B. ODOC Grievance Process

The Offender Grievance Process for Oklahoma prisoners is described in the ODOC's Operating Procedure (OP) 090124. As Plaintiff notes, the copy of OP-090124 attached as Exhibit 1 to Defendants' Motion to Dismiss is dated May 24, 2011, and is not the version of the operating procedure in force during any time relevant to this action. To his Response to Defendants' Motion, Plaintiff has attached a revised copy of OP-090124 with an effective date of January 29, 2013. (ECF No. 34-2). This version apparently remained in force until the next revision became effective on November 20, 2014. In determining whether Plaintiff has exhausted his administrative remedies, the undersigned has considered the January 13, 2003 version provided by Plaintiff.

Section II (A) (1), "Grievable Issues" defines such issues:

> A grievance may be used to address issues regarding conditions of confinement, actions of staff, and incidents occurring within or under the authority and control of DOC that have personally affected the offender making the complaint and **for which a remedy may be allowed by the department or by law**.

(OP-090124, Section II (A) (1)) (emphasis added).

Ten categories of issues subject to the grievance process are listed in Section IV(A): 1. Discrimination; 2. Classification; 3. Complaint Against Staff; 4. Conditions of Confinement; 5. Disciplinary Process; 6. Legal; 7. Medical; 8. Property; 9. Records/Sentence Administration; and/or 10. Religion. (ECF No. 34-2 at 5).

Four non-grievable issues are listed in Section II(B):

> Misconduct reports received through the department disciplinary procedures may not be appealed through the grievance process. Misconduct reports may only be appealed through the procedures referenced in OP-060125 entitled "Department Offender Disciplinary Procedures."
>
> Grievances may not be submitted about matters that are in the course of litigation.
>
> Requests for disciplinary action against staff will not be addressed through the grievance process.
>
> Privately contracted facility property issues are not grievable.

Section IV (B), the first step of the grievance procedure, requires the prisoner to first try to resolve the complaint by "talking with the affected staff, supervising employee or other appropriate staff within three days of the incident." (*Id.*). Section IV (C) requires submission of a Request to Staff, if the issue was not resolved, "detailing the issue/incident completely but briefly." (*Id.*). Requests to staff must be filed within seven days of the incident. (*Id.* at 5-6).

If the issue is not resolved informally, Section V (A) allows the prisoner to submit a Grievance Form, with the relevant Request to Staff attached, to the reviewing authority at the prison within 15 days of the incident or the denial of the request to staff, whichever is later. (*Id.* at 6-7). A prisoner may include only one incident per

grievance. If the reviewing authority determines the grievance does not follow the rules, the grievance "may be returned unanswered for proper completion." (*Id.* at 7).

If the prisoner manages to comply with all the rules at the facility level and has still not been granted relief, the final step is an appeal to the Administrative Review Authority or the Chief Medical Officer (for grievances involving medical care) at the ODOC level. (*Id.* at 10-11). The decision of the Administrative Review Authority or Chief Medical Officer is final. (*Id.* at 12).

### C. Plaintiff's Attempts to Exhaust his Administrative Remedies

On November 6, 2013, Plaintiff filed a grievance designated as an "emergency" directly to the Reviewing Authority. (Motion, Exhibit 2 at 4). He described the nature of his complaint:

> On 11-5-2013, Officer Durant Officer Sgt. Stokes threaten me for complaining of unhealthy, unsanitary, dangerous, offensive condition of the unit shower. Officer Durant handcuffed me tight behind my back injuring me. Officer Durant and Sgt. Stokes made me stand in the shower tightly handcuffed during the shower period for the entire unit. I asked these officers to call Lt. Battles because I was being threaten. These officers stated that they wasn't going to call no one. I then asked Officer Gibson to call Lt. Battles because I was being threaten. Officer Gibson despite witnessing these officers misconduct stated he wasn't calling no one and he Officer Gibson began to threaten me as well. I never presented a threat to any of these officers. Nurse Moss took note of my injuries.

(Motion, Exhibit 2 at 4-5). As relief, Plaintiff sought:

> Conference with Warden Miller, Peterson, and to have audio visual camera employed on unit in which incident occurred reviewed to confirm this use of force was completely

7

> unprovoked. And why I was injured by these officers. Provide X-rays of my wrists and shoulder. $75,000.

(Motion, Exhibit 2 at 4).

Section VIII of the grievance process allows for the filing of an emergency or sensitive grievance:

> A complaint of an emergency nature is one in which the complaint alleges irreparable harm or personal injury will occur and which the grievance process will be unable to address in a timely preventive manner.
>
> A complaint of a sensitive nature is one in which the complaint alleges misconduct by a staff member who either directly supervises the offender or is the reviewing authority where the offender is assigned.

(ECF No. 34-2 at 13). Plaintiff's grievance was returned unanswered by Allison Kusch, the Grievance Coordinator at CCF (the "reviewing authority"). Ms. Kusch uses a form check list comprised of 26 statements used to tersely describe why a grievance is being returned unanswered. (Motion, Exhibit 2 at 2). Ms. Kusch marked Nos. 10, "Not an issue grievable to Oklahoma Department of Corrections [Private Prison Property, misconduct … litigation pending, not within/under the authority/control of the Department of Corrections, no remedy allowed by the department, etc.];" 11, "More than 1 issue—only one issue allowed per grievance;" 12, "Not of a sensitive/emergency nature. You must follow the standard grievance process including giving the facility an opportunity to respond;" and 26, "Other: Monetary damages are not a remedy given out by the department." (Motion, Exhibit 2 at 2).

In her Affidavit attached to Defendants' Motion as Exhibit 3, Ms. Kusch explains why she returned the grievance unanswered. Although she claims to have "specifically noted the procedural defects," the form actually provided little guidance to Plaintiff as to how he should correct his errors. Ms. Kusch does not explain why Plaintiff's grievance did not fall within the definition of "emergency" or at least "sensitive" considering the fact that Plaintiff's grievance concerned threats and injury inflicted by staff members who apparently were in direct contact with Plaintiff, and with whom Plaintiff would have been required to "informally" resolve the issue.

Ms. Kusch also does not attempt to explain the basis of her decision that this grievance contained more than one issue or incident. The grievance clearly describes one incident of excessive force. More than one of the named defendants were involved, but all of them were involved in the same incident. Nothing in the grievance process prevents a grievant from naming every prison official involved in the one incident which gave rise to the grievance. Likewise, nothing in the grievance procedure states that a prisoner cannot seek more than one remedy for the alleged wrong.

Even more troubling, however, is Ms. Kusch's statement that the "issue" was not "grievable." In her Affidavit attached to defendants' Motion, (Motion, Exhibit 3 at 3), Ms. Kusch states she returned the grievance because one of the remedies sought by Plaintiff was monetary damages—a remedy that the ODOC will not provide. But nowhere does the grievance process disallow the filing of a grievance because the remedy sought is monetary damages. In fact, the language in the grievance process upon which Ms. Kusch apparently relied is found in the section of the grievance process

9

describing grievances that may be considered "abuse of the process." (OP-090124, Section IX(A)(d) ("Grievances about de minimus (small, trifling, no available remedy) issues.").

The United States Supreme Court has held that "a prisoner must exhaust administrative remedies even where the relief sought—monetary damages—cannot be granted by the administrative process." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)).

When Plaintiff resubmitted his grievance on November 11, 2013, with a copy of a Request to Staff attached, (Motion, Exhibit 2 at 9), Ms. Kusch again returned the grievance unanswered marking numbers 10, 11, and 26 on the check list. She again states in her Affidavit that the grievance was returned in part because Plaintiff sought monetary relief. (Motion, Exhibit 3 at 4).

By refusing to answer Plaintiff's grievances based on the fact that Plaintiff was seeking monetary damages, Ms. Kusch placed Plaintiff in an untenable position. Before he could file this action seeking monetary damages based on excessive force, he was required to exhaust his administrative remedies; yet he was denied the use of the grievance process because he was seeking, among other things, monetary damages.

Moreover, even if Plaintiff had left out his request for monetary damages, Ms. Kusch would have returned his grievance for including "more than one issue;" yet a prisoner is tasked with "detailing the issue/incident completely[.]" (OP-090124 Section IV(C).

In this case, Plaintiff was thwarted in his attempt to complete the grievance process because his grievances regarding the issue of excessive force were improperly screened out by the reviewing authority, Ms. Kusch. "[A]n exception to the PLRA's exhaustion requirement [exists] where a prison official renders administrative remedies effectively unavailable by improperly screening a prisoner's grievances ...." *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010). To fall within this exception, a prisoner must show that: (1) "he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court"; and (2) "prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." *Id.* at 823–24.

"Where prison officials thwart or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little v. Jones*, 607 F.3d at 1250. Accordingly, Plaintiff's failure to exhaust administrative remedies in this case is excused.

## RECOMMENDATION

After careful consideration of the issues in this action, it is recommended that Defendants' Motion to Dismiss **(ECF No. 29)** be **DENIED**.

## NOTICE OF RIGHT TO OBJECT

The parties are hereby advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court by **February 17, 2015**, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. Failure to

make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## STATUS OF THE REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** on January 29, 2015.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE