IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA

TYRONE HENRY McMILLER, )
)
          Plaintiff, )
)
vs. ) No. CIV-14-161-W
)
CORRECTIONS CORPORATION OF )
AMERICA et al., )
)
          Defendants. )

## ORDER

On January 29, 2015, United States Magistrate Judge Shon T. Erwin issued a Report and Recommendation in this matter and recommended that the Court deny the Motion to Dismiss filed pursuant to Rule 12(b)(6), F.R.Civ.P., by defendants Chad Miller, Jacob Gibson, Sgt. Stokes, Theresa Sellers and Charles S. Paine, Jr., M.D. The parties were advised of their right to object, see Doc. 60 at 11, and the matter now comes before the Court on these five defendants' Objection to Report and Recommendation [Doc. 62].[1]

Plaintiff Tyrone Henry McMiller is incarcerated at Cimarron Correctional Facility ("CCF") in Cushing, Oklahoma, pursuant to a contract between Corrections Corporation of America, Inc., as owner and operator of CCF, and Oklahoma Department of Corrections

---

[1] As to plaintiff Tyrone Henry McMiller's claim as set forth in Count III of his complaint that certain defendants were deliberately indifferent to his serious medical needs in Count III, Magistrate Judge Erwin found in his Report and Recommendation
    (1) that because Grievance No. 13-266, which had been submitted on November 21, 2013, and in which McMiller had complained that he was being denied access to a "doctor for a painful injury to . . . [his] wrists that happened on 11-5-13," Doc. 29-2 at 20, had been granted, see id. at 19, McMiller was not required to appeal that grievance; and
    (2) that any subsequent grievances regarding medical care that were returned unanswered did not affect the issues raised and addressed in Grievance No. 13-266 or render those issues unexhausted. See Doc. 60 at 2, n.2.
    The defendants did not challenge these findings in their Objection to Report and Recommendation; accordingly, the Court deems McMiller's claim in Count III exhausted.

("DOC"). Miller is the facility's Warden, and Dr. Paine is the facility's physician. Sellers is employed by CCF as Health Services Administrator, and Stokes and Gibson are employed as Senior Corrections Officers.

In his complaint, which seeks relief under title 42, section 1983 of the United States Code, McMiller has alleged, inter alia, that he was subjected to retaliation in the form of unlawful and excessive force (Counts I and II) and to deliberate indifference to his serious medical needs (Count III). The Prison Litigation Reform Act ("PLRA") of 1996 provides in pertinent part that

> [n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

DOC's Offender Grievance Process, as outlined in OP-090124, sets forth the procedure to be used by Oklahoma inmates, including those incarcerated at CCF, for exhausting administrative remedies. See Doc. 34-2.[2] "Grievable [i]ssues" are those

> issues regarding conditions of confinement, actions of staff, and incidents occurring within or under the authority and control of DOC that have personally affected the offender making the complaint and for which a remedy may be allowed by [DOC] . . . or by law.

Id. at 2, Section II.A.1.

There are ten (10) categories of issues that are covered by the grievance process:

1. Discrimination; 2. Classification; 3. Complaint Against Staff; 4. Conditions of Confinement; 5. Disciplinary Process; 6. Legal; 7. Medical; 8. Property; 9. Records/Sentence Administration[;] and/or 10. Religion.

---

[2]The grievance policy submitted by the defendants, see Doc. 29-1, was not the policy in effect at the time the events giving rise to this lawsuit occurred. The Court ADMONISHES the defendants and their counsel to be more diligent and attentive when submitting documents.

Id. at 5, Section IV.A. There are four categories of issues that are non-grievable:

> 1. Misconduct reports received through [DOC] . . . disciplinary procedures . . . .
>
> 2. . . . [M]atters that are in the course of litigation.
>
> 3. Requests for disciplinary action against staff . . . .
>
> 4. Privately contracted facility property issues . . . .

Id. at 2-3, Section II.B.

DOC's grievance policy requires an inmate to attempt to resolve any grievable issue through informal resolution "by talking with the affected staff, supervising employee or other appropriate staff within three days of the incident." Id. at 5, Section IV.B. If the matter is not resolved, the inmate "must submit a 'Request to Staff' . . . [that] "detail[s] the issue/incident completely but briefly." Id. Section IV.C.

If the inmate is not satisfied with the response to his Request to Staff, the inmate must "complete the 'Offender Grievance Report Form,'" id. at 6, Section V.A., and attach thereto "the 'Request to Staff' form used in the informal grievance process with the response." Id. at 6-7, Section V.A. If the inmate remains dissatisfied with the response to his formal grievance, the inmate must appeal to DOC's Administrative Review Authority or Chief Medical Officer, whose decision is final. E.g., id. at 10-13, Section VII.

DOC policy dictates that the Request to Staff and the formal grievance be limited to one issue or incident. E.g., id. at 5, Section IV.C.3; id. at 7, Section V.A.4. DOC policy further dictates that if the inmate does not follow the instructions set forth in DOC's grievance process or on the grievance forms themselves, "the grievance may be returned

unanswered for proper completion." Id. at 7, Section V.A.7. DOC policy further provides that "[i]f allowed, the offender must properly re-submit the grievance . . . ." Id.

DOC's Offender Grievance Process also permits emergency or sensitive grievances. E.g., id. at 13, Section VIII. Such "[g]rievances may be submitted directly to the reviewing authority without informal resolution when the complaint is of a sensitive nature or when substantial risk of personal injury or other irreparable harm exists." Id. Section VIII.A.

An "emergency grievance" is defined as

> one in which the complaint alleges irreparable harm or personal injury will occur and which the grievance process will be unable to address in a timely preventive manner.

Id. Section VIII.A.1. A "sensitive grievance"

> is one in which the complaint alleges misconduct by a staff member who either directly supervises the offender or is the reviewing authority where the offender is assigned.

Id. Section VIII.A.2.

On November 6, 2013, McMiller submitted Grievance No. 13-246, on an Offender Grievance Report Form, which he labeled "Emergency!!!" Doc. 29-2 at 4. He asserted that on November 5, 2013, Stokes and Corrections Officer Duran threatened him after he complained that the unit's shower was unsanitary and dangerously offensive, that Duran thereafter handcuffed his wrists behind his back too tightly and that Duran and Stokes then required him to stand in the shower handcuffed during shower period for the entire unit. See id.

McMiller advised in that grievance that he had attempted to resolve the matter informally with Lt. Battles, Stokes, Duran and Gibson, and, as the action he wanted taken, he requested a conference with Warden Miller, "to have [the] audio visual camera

4

employed on [the] unit in which [the] incident occurred reviewed to confirm [that] th[e] use of force was completely unprovoked," id., x-rays of his wrists and shoulder and $75,000.00. See id.

Grievance No. 13-246 was returned unanswered by CCF Grievance Coordinator Allison Kusch that same date. See id. at 2. Kusch used a standardized CCF form, and she marked the following reasons for her decision:

> 10. Not an issue grievable to [DOC] . . . [Private prison property, misconduct (see OP-090124, Section II. B.1.) litigation pending, not within/under the authority/control of . . . [DOC], no remedy allowed by the department, etc.].
>
> 11. More than 1 issue - only 1 issue allowed per grievance.
>
> 12. Not of a sensitive/emergency nature. You must follow the standard grievance process including giving the facility an opportunity to respond.
>
> . . . .
>
> 26. Other: Monetary damages are not a remedy given out by the . . . [DOC].

Doc. 29-2 at 2.

Although McMiller did not agree with Kusch's assessment that his grievance "was not of an emergency nature," Doc. 34 at 4, he did not appeal; rather, he chose "to follow the standard grievance procedure," id., as Kusch had instructed, and on November 12, 2013, he resubmitted his grievance, now numbered Grievance No. 13-246-2. See Doc. 29-2 at 9. McMiller again described the nature of his complaint as threats and unprovoked excessive use of force in retaliation for his complaints about the shower, and he advised of the initial informal resolution attempts as well as his renewed attempts on November 6 and 7, 2013. See id. As the action to be taken, he again sought a conference with Warden Miller, review of the audio/visual camera footage, x-rays of his wrists and monetary

relief in the amount of $75,000.00. See id. McMiller also complained that he was being subjected to racial discrimination. See id. at 10.

As required, McMiller attached to this grievance the Request to Staff dated November 6, 2013, see id. at 11, that he had submitted to Unit Manager Munday in an attempt to resolve the matter informally. In that document, McMiller had repeated his complaints about the Duran's and Stokes' threats and mistreatment and outlined his injuries. See id. McMiller also recited the relief he had requested as well as asked for "separatees" between these officers and himself. See id.

In her response to McMiller's Request to Staff, Kusch noted that per DOC policy inmates' requests for disciplinary action against staff would not be addressed through the grievance process, see id., and that McMiller could discuss separatees with his unit manager or case manager See id. Kusch also advised that monetary relief was not a remedy awarded by DOC. See id.

In her response to Grievance No. 13-246-2, Kusch, again using CCF's standardized form, advised McMiller that his grievance was being returned unanswered for the following reasons:

> 10. Not an issue grievable to [DOC] . . . [Private prison property, misconduct (see OP-090124, Section II. B. I.), litigation pending, not within/under the authority/control of [DOC] . . . , no remedy allowed by the department, etc.].
>
> 11. More than 1 issue - only 1 issue allowed per grievance.
>
> . . . .
>
> 26. Other: Monetary damages are not a remedy given out by [DOC] . . . . However, this matter is being reviewed in accordance with procedure.

Doc. 29-2 at 8.

6

In their Motion to Dismiss, the defendants argued that while McMiller began the grievance process as to the claims asserted in Counts I and II, he failed to complete the process. They contended that his failure to do so constitutes a failure to properly exhaust his administrative remedies and warrants dismissal of these two counts.

In his Report and Recommendation, Magistrate Judge Erwin disagreed; he found that these claims were exhausted because McMiller had been "thwarted in his attempt to complete the grievance process because his grievances regarding the issue of excessive force were improperly screened out by [Kusch,] the reviewing authority[.]" Doc. 60 at 11.[3] Magistrate Judge Erwin found fault with Kusch's use of CCF's standardized form when she responded to McMiller's initial grievance and his resubmitted grievance because the form "provided little guidance to . . . [McMiller] as to how he should correct his errors." Id. at 9. Magistrate Judge Erwin further noted that Kusch's failure to "explain why [McMiller's] . . . grievance did not fall within the definition of 'emergency or at least 'sensitive' considering the fact that [his] . . . grievance concern[ed] threats and injury inflicted by staff members who apparently were in direct contact with [McMiller] . . . , and with whom [he] . . . would have been required to 'informally' resolve the issue." Id. Magistrate Judge Erwin also objected to Kusch's failure "to explain the basis of her decision[s] that th[ese] grievance[s] contained more than one issue or incident," id., and found "troubling," id., her "statement that the 'issue' was not 'grievable.'" Id.

Upon de novo review of the record, the Court adopts the Report and Recommendation, but only to the limited extent set forth herein. As the United States

---

[3]The Court notes that Magistrate Judge Erwin has relied on Ninth Circuit case law as opposed to Tenth Circuit case law in reviewing DOC policies and procedures.

Supreme Court has explained, to properly exhaust administrative remedies, a plaintiff must "us[e] all steps that the [facility] . . . holds out, and [do] so properly (so that the . . . [facility] addresses the issues on the merits)." Woodford v. Ngo, 548 U.S. 81, 90 (2006)(quotation and citation omitted). "An inmate who begins the grievance process but does not complete it is barred from pursuing a [section] 1983 claim." Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002).

The PLRA, however, only requires the exhaustion of "available" administrative remedies. E.g., id.; 42 U.S.C. § 1997(e)(a)(requiring exhaustion of "such administrative remedies as are available"). "Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable,'" Little v. Jones, 607 F.3d 1245, 1250 (10th Cir. 2010), and the prisoner's failure to exhaust is excused.

"[P]resenting a defective or non-complying grievance . . . does not constitute exhaustion of remedies," Brewer v. Mullin, 130 Fed. Appx. 265, 265 (10th Cir. 2005)(cited pursuant to Tenth Cir. R. 32.1), and CCF's grievance system cannot be bypassed simply by improperly filing an emergency grievance. E.g., id. at 265-66 (10th Cir. 2005)(cited pursuant to Tenth Cir. R. 32.1)(while plaintiff may believe prison officials erred in deciding his issues were not emergencies, that does not mean that he can simply ignore their determination and opt out of the grievance procedure). See Craft v. Null, 543 Fed. Appx. 778 (10th Cir. 2013)(cited pursuant to Tenth Cir. R. 32.1)(even if plaintiff is correct in characterizing grievance as emergency and in complaining it had been improperly returned, that does not mean he could ignore authorities' determination that grievance did not constitute emergency). McMiller's submission of what he labeled an "emergency"

grievance did not complete the grievance procedure because he was advised his grievance did not qualify as an emergency grievance and that he must therefore complete the regular grievance procedure provided by DOC. To the extent McMiller disagreed with Kusch's assessment of the nature of his grievance,[4] he could have appealed. See Doc. 34-2, Section VII. Accordingly, the Court finds that Kusch, who not only was tasked with the responsibility of screening McMiller's grievances, but also was authorized to return them unanswered,[5] did not prevent or hamper McMiller's efforts in complying with DOC's Offender Grievance Process in connection with Grievance No. 13-246.[6]

---

[4] As permitted by OP-090124, the reviewing authority "[u]pon receipt of a grievance marked 'emergency' or 'sensitive,' . . . will have 24 hours to determine if it is in fact an emergency or sensitive grievance. Doc. 34-2 at 13, Section VIII.B. If the "reviewing authority determines that a grievance is not of an emergency or sensitive nature, the grievance will be returned to the offender that the grievance is not of an emergency or sensitive nature and that the standard grievance process must be followed." Id. at 14, Section VIII.C.

[5] See id. at 8-9, Section VI.A. Screening requires the reviewing authority to determine among other things whether the offender has raised a grievable issue, whether the grievance contains more than one issue, e.g., id. at 9, Section VI.A.2, and whether the grievance, "[i]f alleged to be of an emergency or sensitive nature, . . . should be handled as an emergency or sensitive grievance . . . ." Id. Section VI.A.3.

[6] That Kusch returned Grievance No. 13-246 unanswered neither excused McMiller from the requirement that he exhaust DOC's administrative remedies nor "ma[d]e the exhaustion process unavailable to [McMiller] . . . ." Thomas v. Parker, 609 F.3d 1114, 1118 n.2 (10th Cir. 2010). As stated, DOC's Offender Grievance Process expressly authorizes prison officials to return grievances unanswered if the inmate fails to follow instructions. E.g., Doc. 32-2 at 7, Section V.A.7 (if offender fails to follow instructions, "grievance may be returned unanswered for proper completion"). See Little v. Jones, 607 F.3d 1245, 1249 (10th Cir. 2010)("prison's procedural requirements define the steps necessary for exhaustion"). Upon the return of Grievance No. 13-246, McMiller was obligated to either resubmit a procedurally compliant grievance or appeal. See Doc. 34-2 Sections V.A.7, VII.

Moreover, Kusch's use of CCF's standardized form did not thwart or hinder McMiller's ability to exhaust his administrative remedies, despite Magistrate Judge Erwin's opinion that such form "provided little guidance to [McMiller] . . . as to how he should correct his errors." Doc. 60 at 9. See Smith v. Jones, 2014 WL 5448890 (W.D. 2014)(wherein Judge Heaton adopted a Report and Recommendation stating DOC policy requires reviewing authority when returning grievances unanswered to notify offender as to filing's errors but does not entitle offender to detailed explanation).

As to McMiller's resubmitted grievance, Grievance No. 13-246-2, it was also returned unanswered because Kusch determined that the grievance contained non-grievable issues (a request for disciplinary action against staff, separatees, and a remedy not allowed by DOC, see Doc. 34-2 at 2, Section 11.A.1),[7] as she had explained in her response to McMiller's Request to Staff, and because Kusch found that McMiller had raised more than one issue (retaliation for complaining about the unsanitary and offensive conditions of the shower and race discrimination). Because, as stated, Kusch was obligated to screen McMiller's grievances and permitted to return them unanswered,[8] the Court does not find that in returning this grievance because in her opinion it contained more than one issue, Kusch prevented McMiller from complying the DOC's Offender Grievance Process. Cf. Fields v. Oklahoma State Penitentiary, 511 F.3d 1109, 1112 (10th Cir. 2007)(court has no obligation to examine each denial of grievance to determine whether grievance was in fact flawed).

The Court does however take issue with Kusch's use of the confusing and ambiguous phrase, "However, this matter is being reviewed in accordance with procedure," Doc. 29-2 at 8, in conjunction with her return of Grievance No. 13-246-2 unanswered and

---

[7]But see Booth v. Churner, 532 U.S. 731, 741 (2001)(exhaustion of administrative remedies required "regardless of the relief offered through administrative procedures); Jones v. Miller, 2014 WL 4267409 (W.D. Okla. 2014)(to extent the grievance was returned unanswered based on prison officials' determination that matter involved a non-grievable issue, offender had no available remedy).

[8]Screening requires the reviewing authority to determine among other things whether the offender has raised a grievable issue and whether the grievance contains more than one issue. E.g., Doc. 34-2 at 9, Section VI.A.2.

her failure to indicate whether McMiller had the opportunity to re-submit his grievance.[9] The Court is aware that each time a grievance was returned unanswered McMiller was admonished that further explanations could be found in DOC's Offender Grievance Process and that it was McMiller's "responsibility to read and follow" the same. See Doc. 29-2 at 2; id. at 8. However, DOC policy permitted resubmission of a procedurally compliant grievance only "if allowed." Id. at 7, Section V.A.7 (emphasis added). Based on the current record, it does not appear that McMiller chose to forego the opportunity to correct the deficiencies noted by Kusch; rather, it appears that he may not have been given the chance to do so. E.g., Jones, 2014 WL 4267409 *1.[10]

---

[9]"The reviewing authority will return unanswered any grievance that contain[s] any errors in the filing process and notify the offender to correct the errors . . . ." Id. at 10, Section VI.B (emphasis added).

[10]Although Magistrate Judge Erwin did not refer to McMiller's subsequent submission in determining that McMiller had exhausted his administrative remedies, the record contains a "Misconduct/ Grievance Appeal Form to Administrative Review Authority," see Doc. 34-8, dated November 19, 2013, that cites to Grievance No. 13-246-2. McMiller claimed therein that the reviewing authority had committed "probable error," Doc. 34-8 at 1, and that "newly discovered/available evidence not considered by the reviewing authority," id., existed regarding the unlawful use of restraints. See id. at 2. The appeal was returned unanswered by DOC's designee, Mark Knutson, for two reasons:

> 10. Not an issue grievable to [DOC] . . . [Private prison property, misconduct (see OP-090124, Section II. B. I.), litigation pending, not within/under the authority/control of [DOC] . . . , no remedy allowed by the department, etc.].
>
> . . . .
>
> 26. Other: You have stated on your grievance form that you are requesting $75,000.00 as an action the reviewing authority should take. Monetary damages are not a remedy allowed by . . . [DOC], therefore, your grievance will not be answered by this office.

Doc. 34-9.

Based on the foregoing, the Court

(1) ADOPTS the Report and Recommendation [Doc. 60] issued on January 29, 2015;

(2) DENIES the Motion to Dismiss[11] [Doc. 29] filed by Miller, Gibson, Stokes, Sellers and Paine; and

(3) RE-REFERS this matter to Magistrate Judge Erwin for further proceedings.

ENTERED this 6th day of March, 2015.

LEE R. WEST
UNITED STATES DISTRICT JUDGE

---

[11]To the extent, the parties have submitted materials outside the pleadings and the Court has considered the same, the defendants' motion could be construed as one seeking relief under Rule 56, F.R.Civ.P. Neither party has objected to Magistrate Judge Erwin's failure to convert the motion even though he relied on material outside the pleadings. Had the Court itself decided to convert the defendants' motion, no party could claim prejudice since both McMiller and the defendants cited, and relied on, outside materials. See Jones v. Cannon, 589 Fed. Appx. 849, 854 n.5 (10th Cir. 2014)(cited pursuant to Tenth Cir. R. 32.1).
Although the Court finds conversion to be the better practice under these circumstances, the Court is aware that the Tenth Circuit has not indicated that a motion seeking dismissal under Rule 12(b)(6), supra, of a prisoner's conditions of confinement claims for failure to exhaust administrative remedies is improper or held that such a motion must be converted to a motion for summary judgment if the movant relies on evidentiary documents outside of the complaint. Compare Lee v. Benuelos, 2014 WL 6788193 (10th Cir. 2014)(unpublished)(granting summary judgment, but dismissing complaint without prejudice); Jones, 589 Fed. Appx. at 852 (unpublished)(summary judgment); Davis v. Bear, 537 Fed. Appx. 785 (10th Cir. 2013) (unpublished)(summary judgment); Calbart v. Sauer, 504 Fed. Appx. 778 (10th Cir. 2012) (unpublished)(summary judgment), with Craft v. Olden, 556 Fed. Appx. 737 (10th Cir. 2014) (unpublished)(dismissal without prejudice); Craft, 543 Fed. Appx. at 780 (unpublished)(dismissal without prejudice). See Cordova v. Dowling, 534 Fed. Appx. 751, 754 (10th Cir. 2013) (unpublished)(citing Steele v. Federal Bureau of Prisons, 355 F.3d 1204, 1212-13 (10th Cir. 2003) (recognizing that dismissal based on lack of exhaustion ordinarily should be without prejudice because failure to exhaust is often a temporary, curable, procedural flaw), overruled on other grounds by Jones v. Bock, 549 U.S. 199 (2007)); Wilson v. Bezona, 485 Fed. Appx. 976 (10th Cir. 2012)(unpublished)(remanding to district court so that it may modify its dismissal to be without prejudice for failure to exhaust administrative remedies).